# Hermstead's Appeal.

1. On exceptions to a report of an auditor, the testimony not having been returned with the report, the court below said that it was the duty of the party relying on the testimony to see that it was taken down and returned to the court. *Held*, to be error, and that it was not the duty of one party more than of the other.

2. It is the duty of an auditor to take notes of the material evidence, not necessarily to return it with his report, but to have it ready to file if called for by the court.

3. An auditor made a report finding facts and stating that he was not requested to report the testimony, and that he took notes of it only to refresh his memory. Upon exceptions that the auditor erred as to the facts, the report should have been recommitted to him to rehear and reduce the testimony to writing. It was error to decide on the assumption that there was not sufficient evidence to sustain the finding.

4. A trustee can claim no credit except for the amount he has actually disbursed in payment of claims against the estate, whether done with his own funds or the funds of the estate.

January 23d 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Chester county*, in the matter of the assigned estate of Joseph Hermstead: Of January Term 1869, No. 300.

On the 6th of August 1866, Joseph Hermstead assigned all his property to Mahlon Fox for the benefit of his creditors. The amount of his estate with which the assignee charged himself on the settlement of his account, was $9112.89. One of the credits was $500 as accountant's compensation. The estate proved suffi-

cient to pay all the creditors, and the assignee's account showed in his hands a balance of $793.45 due the assignor.

Exceptions were filed to the account, and James H. Bull, Esq., was appointed auditor to examine and report his opinion upon the exceptions.

The auditor reported:—

" There were a number of witnesses called by both exceptor and accountant. The accountant was called by the exceptor, and was subjected to a long, full and careful examination; and his evidence convinced the auditor that a wilful perversion of the funds of the estate had been made by him to his own personal uses and profit. He alleges in his testimony that he *discounted* claims of various creditors out of his own private funds, when there was no money of the estate in his hands; and yet, other parts of his testimony, taken into consideration with the dates of his vouchers of payment, clearly demonstrate, that ample funds of the estate were in his hands, or under his control at that very time, to meet those liabilities in full. In his account, he gives no credit to the estate for the discount made upon those claims, but charges the estate as if they had been paid by him in full. * * * In all these cases the accountant charged the estate with the full claims and retained the discounts himself. In one instance *he made a double charge* for an article taken by the assignor at the appraised value. This was a *sow* valued at $30, and taken by Joseph Hermstead at the valuation. It was sold afterwards, and the assignee charged him with $40, the amount for which it sold.

" The accountant was called upon to produce his vendue book —he testified that it had been lost about moving time, in 1868, and he could give no account of the articles sold at the sale of personal property, nor the prices of articles sold, and yet being called, on a subsequent day, before the auditor, he testified that his account as filed was made out partly from the vendue book, and that the account had been drawn up in the early part of May 1868, a month after the alleged loss of the vendue book. The account was filed May 12th 1868. He produced no book of entries to show a correct and satisfactory account of his management of the estate. In fact, the entire testimony of this trustee is so full of inconsistencies and uncertainty, and his account so confused, when subjected to proper scrutiny, that the auditor is of opinion there has been a wilful and persistent effort, on his part, to conceal the true condition of the estate and to appropriate as much of this trust to his own personal benefit as he thought he could do, and escape from any penalty therefor.

" Under these circumstances, the auditor is of opinion, that the accountant should be charged with all moneys traced to his hands, and not clearly accounted for; and further, that in consideration of the violent abuse of his trust, he should not be

allowed any compensation. No fair or usual account has been kept by this trustee with the estate; important papers have been lost, concealed or carelessly mislaid; the funds have been used for personal advantage of the trustee, and the estate handled generally with such gross carelessness, that the auditor believes he should be visited with the penalty thus reported." * *

The auditor struck out the compensation claimed by the assignee, reduced the credits for payment of several debts of the assignor to the amounts actually paid, and made other corrections which increased the balance in favor of the assignor, as of the time of filing the account, to $1447.78. Further payments made by the assignee since that time were allowed by the auditor, which, with the expenses of the audit, reduced the balance to $1216.10.

Exceptions were filed with the auditor to his report; alleging errors in surcharging the account and disallowing credits; also, amongst others, that " the auditor erred in not reporting the evidence as proving that the discounts of claims were made with the assignee's own funds, and upon the solicitation of the claimants."

The auditor in his report on these exceptions says—

" Upon mature consideration of the exceptions and a reconsideration of the report, the auditor can find no cause to change the conclusions he has arrived at as they are set forth therein.

" In regard to the notes of testimony taken by the auditor, however, he feels that in justice to himself, he should state that neither of the counsel requested that he should report the testimony, and the notes taken by him were only to refresh his own memory, as to such matters as he supposed he would not readily remember.

" The following facts were clearly established and so the auditor reports." * * The auditor then gives statements as made by the accountant on his examination at the hearing as establishing the facts on which he relies.

Upon the coming in of these reports, on the application of the accountant for a further hearing, the case was sent back to the auditor to take other testimony. The auditor, after the rehearing, reported that he saw no reasons to change his former conclusions. He returned, with the report, the testimony taken at this hearing. Exceptions were filed with the auditor to this report. On these he reported that he found " no reason to change the conclusions he arrived at in the previous report. The testimony given by the accountant himself has not increased the confidence of the auditor in the reliability of his testimony."

The court (Butler, P. J.) corrected the report by restoring the credit $30 for the sow, and in his opinion said :—

" The only remaining subject of controversy is the compensation. The assignee charged $500 on this account. The auditor has disallowed the entire sum, on the ground that the assignee was

[Hermstead's Appeal.]

guilty of a 'violent abuse of his trust,'—'a wilful perversion of the funds of the estate to his own personal 'uses and profits.' If the assignee is guilty in this respect, the auditor is right in depriving him of all compensation. He, however, protests his innocence, challenges the correctness of the auditor's conclusions, and asserts that they are without any support in the evidence. The report shows that the auditor deduces his conclusions in this respect, from the statement of the assignee himself. He says 'the accountant was called and subjected to a long, full, and careful examination; and his evidence convinced the auditor that a wilful perversion of the funds of the estate had been made by him to his own personal use and profit.' This is a grave charge; of serious consequences to the assignee; and it is his right to have the conclusions of the auditor reviewed by the court, in the light of the testimony. But when we attempt to do this, we find that the testimony is not reported; that the statement, on which the assignee is convicted of this grave offence, was not reduced to writing. The auditor says 'the notes of testimony taken, were only to refresh his (the auditor's), memory as to such matters as he supposed he should not readily remember.' Under the circumstances, it is impossible to make a satisfactory review of the auditor's conclusions. The evidence should have been fully taken down, and returned to the court; and it was the duty of the party relying upon it, to see that this was done. The assignee asserts that there is no evidence justifying the auditor; and in turning to the record, we find none. It is true, the auditor, after exceptions were filed to his action, denying the existence of evidence to support his inferences and conclusions, reports certain things as having been stated by the assignee. And it is upon these things mainly, if not entirely, that the auditor has relied in convicting the assignee of faithless and fraudulent conduct. How these matters, reported in part, if not altogether, from the recollection of the auditor, after the lapse of some time, might appear if we had the entire statement of the assignee, in his own language, we cannot know. But taking them as given, they do not, in our judgment, warrant so harsh a conclusion as the auditor has drawn. We do not think they show that the vendue-book was suppressed. Nor that any attempt was 'wilfully made by the assignee to pervert the funds of the estate to his own use.' He admits that he bought up certain claims at less than their face, paid for them with his own money, because he had none of the estate in hand, and because the assignor had forbidden him to pay out any such money in advance of the final settlement. And these claims he charged to the estate according to their respective faces. This was wrong; but we see no sufficient evidence that it was wilfully wrong. It is pretty manifest that the assignee believed himself entitled to such a credit, for his counsel so believed and urged upon us and the auditor.

It was a mistake, but we see no satisfactory evidence that it was anything more. Striking out the credit, as the auditor has properly done, the assignor gets the benefit of the transaction, and is $83.36 the better off of it.

"The auditor, however, concludes that the claims were purchased with the funds of the estate, because, he says, a calculation (drawn in part, at least, from the same statement of the assignee) renders it manifest that he had, or should have had, funds of the estate in his hands at the time. But is it safe to draw such a conclusion from such data against the sworn declaration of the assignee that he did not use the funds of the estate for this purpose? We think not. And it is these two matters—the suppression of the vendue book, and discounting claims with the funds of the estate, together with the supposed double credit of the sow, on which the auditor appears to have based his conclusion that the assignee has been guilty of a 'wilful perversion of the funds of the estate to his own personal use and profit.' In respect to this last item—the sow—we have seen that the evidence does not justify the finding that there was a double credit. But, if there was, can it well be doubted that this was a mere mistake? Where is the evidence that it was wilful? If fraud was contemplated in this manner, why stop with this one trifling item? A charge of bad faith, fraudulent dealing in a trustee, should be supported by clear, convincing proof; inferences against him, so serious and damaging, should not be lightly drawn. Where the circumstances relied upon are susceptible of a more charitable construction the charge should fail; for all presumptions are in favor of good faith.'

The court held, however, that the compensation was too large and reduced it to $270. He concluded the opinion:—

"And this result we believe will do justice to both parties. The assignor will get all he is entitled to have; he fails simply in his effort to punish the assignee. And the assignee will be paid the value of his services.

"We will say in conclusion, that had the evidence been taken down and reported, we might possibly have reached a different result; but in view of the circumstances presented, we are satisfied that any other would be unsafe."

After altering the auditor's report in the particulars referred to in the opinion, the court decreed that there was in the hands of the assignee due the assignor the sum of $898.60.

The assignor appealed from this decree and assigned for error that the court allowed the accountant credit for the price of the sow: and any commissions.

*R. E. Monaghan*, for appellant.—The report of an auditor as to facts will not be set aside unless for plain mistake: Stehman's

[Hermstead's Appeal.]

Appeal, 5 Barr 414; Landis *et. al. v.* Scott, 8 Casey 495; Miller's Appeal, 6 Id. 478; Bolton's Appeal, 3 Grant 204; Ludlam's Appeal, 1 Harris 190; Burrough's Appeal, 2 Casey 264; Mahler's Appeal, 2 Wright 221; Chew's Appeal, 9 Id. 228; Wistar's Appeal, 4 P. F. Smith 60; Snyder's Appeal, Id. 67; Brua's Appeal, 5 Id. 294; Sharpe's Estate, 2 Phil. R. 280.

An unfaithful trustee will not be allowed commissions: Sterrett's Appeal, 2 Penn. R. 419; Grant *v.* Seitsinger, Id. 527; Swartswalter's Account, 4 Watts 77; Dyott's Appeal, 2 W. & S. 557; Stehman's Appeal, 5 Barr 413; McCahan's Appeal, 7 Id. 56; Raybold *v.* Raybold, 8 Harris 308; Martin's Appeal, 11 Id. 433; Holman's Appeal, 12 Id. 175; Greenfield's Estate, Id. 232; Berryhill's Administratrix's Appeal, 11 Casey 245; Robinett's Appeal, 12 Id. 174; McCauseland's Appeal, 2 Wright 466; Stearly's Appeal, Id. 525; Smith's Appeal, 11 Id. 424; Snyder's Appeal, 4 P. F. Smith 67; Sharpe's Estate, 2 Phil. R. 280.

*W. Darlington* (with whom was *J. H. Brinton*), for appellee.

The opinion of the court was delivered, February 1st 1869, by SHARSWOOD, J.—Mahlon Fox was the assignee of the appellant for the benefit of creditors. He filed his account, which was referred to an auditor, who reported certain facts as appearing upon the examination of the accountant and other evidence before him, upon which he disallowed his claim to commissions. It appeared by the report of the auditor on exceptions that he had taken no notes of the testimony. The court below sustained the exceptions, and allowed the assignee commissions. They say in their opinion, " Under the circumstances, it is impossible to make a satisfactory review of the auditor's conclusions. The evidence should have been fully taken down, and returned to the court; and it was the duty of the party relying upon it to see that this was done. The assignee asserts that there is no evidence justifying the auditor; and in turning to the record we find none." We cannot assent to the position that it was the duty of the party relying on the testimony to see that it was reduced to writing. It was no more the duty of the one party than the other. It was the duty of the auditor to take notes of all the material evidence —not indeed to return it with his report, for that in a large majority of cases would uselessly encumber the record—but to have it ready to file in case it should be called for by the court. The auditor was the court's own officer, and it was their duty to see that he performed his duty. The report should have been recommitted to him with directions to rehear the case and reduce the testimony to writing. The court were in error, therefore, in deciding the case on the assumption that there was not sufficient evidence to sustain the finding by the auditor.

The auditor reports three facts as the ground of his opinion: First. That no fair or usual account had been kept by the assignee. "He produced no book of entries to show a correct and satisfactory account of his management of the estate." This fact is admitted in the opinion of the court. It does not appear that the accountant denied it. It might not of itself be conclusive; but it was undoubtedly negligence. He must in such a case depend upon his memory or upon loose receipts or memoranda. There may be quite sufficient to make out the credit side of his account—the disbursements for which he has vouchers. But it leaves him to depend upon his memory or such loose memoranda for the debit side—the amounts received by him and with which he is chargeable. The second fact was, that he had carelessly lost or mislaid the vendue-book. It was not produced before the auditor—but the assignee insisted that he had possession of it when he made out the account, although in this matter the auditor reports that he contradicted himself. The court say: "In the loss of the vendue-book and the failure to keep full accounts of his transactions, the assignee has failed in his duty." They nevertheless proceed to allow him commissions. The third fact is, that the assignee had bought up debts of the estate at a discount, and then claimed a credit for them in his account as if paid in full. The fact is not denied, but the court say: "The auditor concludes that the claims were purchased with the funds of the estate, because he says a calculation (drawn in part, at least, from the same statement of the assignee) renders it manifest that he had or should have had funds of the estate in his hands at the time. But is it safe to draw such a conclusion from such data against the sworn declaration of the assignee, that he did not use the funds of the estate for this purpose? We think not." Suppose he did not use the funds of the estate, does that help the case of the accountant? A trustee has no right whatever to speculate upon the probabilities that the estate will pay, for his own private gain. The rule is an inflexible one—funds or no funds: he can honestly claim no credit in his account with his *cestui que trust*, except for the amount which he has actually disbursed. It would be a strange doctrine to hold that he can screen himself from the consequence of having made such an unjustifiable overcharge, when discovered and exposed, by the plea that he had not used the funds of the estate, but his own funds, in the purchase of the claim. The *cestui que trust* is compelled to hunt up testimony to falsify the account, and if he should be unable to do so by the death or distance of the witnesses, or if he should be trustful and unsuspicious and institute no inquiry, the trustee would quietly retain in his own pocket the gain which belongs to the estate. It would not only be impolitic but highly dangerous not to frown upon such misconduct, and visit it with the deserved penalty

[Hermstead's Appeal.]

which always attaches to infidelity in a trustee. We cannot therefore concur with the court below in the conclusion at which they arrived upon their own version of the facts.

We see no reason to think that the court were wrong in regard to the item of the sow which forms the subject of the 2d assignment of error.

> Decree reversed, and it is ordered that the sum of $270, allowed to the accountant Mahlon Fox for his commissions, be stricken out, and the record be remitted to the court below, that the balance may be distributed according to law.